IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**YOLANDA CÁNO-ANGELES**, *et al.*,

   Plaintiffs,

v.

**COMMONWEALTH OF PUERTO RICO (DEPARTMENT OF EDUCATION)**,

   Defendant.

Civil No. 15-1005 (BJM)

**OPINION AND ORDER**

    Yolanda Cáno-Angeles and Genaro Herrera Dos Reis, personally and on behalf of their son, FHC (collectively, "Cáno"), appeal the administrative decision of the Puerto Rico Department of Education ("the Department"), arguing that the administrative law judge ("ALJ") incorrectly determined that she lacked jurisdiction to resolve Cáno's claim for reimbursement of transportation expenses pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Docket No. 29. The Department did not oppose the appeal, and I granted Cáno's motion to deem the appeal submitted for adjudication. Docket No. 30. The parties consented to magistrate judge jurisdiction. Docket No. 22.

    For the reasons set forth below, the ALJ's decision is **REVERSED**, and the case is **REMANDED** to the ALJ.

**BACKGROUND**

    These facts are drawn from Cáno's verified complaint, which the Department failed to answer. Docket No. 1 ("Compl."). Fed. R. Civ. P. 12(a)(1)(A)(i).

*FHC's Transportation Expenses*

    FHC has attended the Instituto Modelo de Enseñanza Individualizada ("IMEI") since 2007. Compl. 4. He has received a transportation scholarship to pay for his transportation services to IMEI and to the following weekly therapy sessions: (1) five

speech therapy sessions at the Clínica Terapeútica para el Desarrollo del Niño; (2) three occupational therapy sessions at the Centro de Evaluación e Intervención Pasos; (3) three physical therapy sessions at the Guimerfe Center in Caguas; (4) two swimming therapy sessions at the Guimerfe Center in Cupey; and (5) one visual-functional therapy session at the Centro para el Desarrollo de Inteligencia Visual y Académica. *Id.* at 4–5.

The Department's Special Education Manual provides for reimbursement of transportation expenses according to the rates certified by the Public Service Commission ("Commission"). *Id.* at 5. The Department's other guidance document, Directives for Transportation Services for Special Education Students, indicates that the reimbursement rates for academic years 2012 to 2014 are set by the Commission. *Id.* To determine the Commission's rates, the Department's guidance document states that the rates should be obtained from the Commission. *Id.* Cáno obtained certifications from the Commission for the trips to IMEI and to the various weekly therapy sessions. *Id.* However, the Department refused to reimburse Cáno for her transportation expenses incurred during 2012 to 2014 according to the rates certified by the Commission.[1] *Id.* at 6.

*Administrative Proceedings*

On May 1, 2014, Cáno filed an administrative complaint against the Department, requesting the reimbursement of the transportation expenses. *Id.* An administrative hearing was granted, and held on September 16, 2014. *Id.* At the hearing, the Department argued that Puerto Rico Law 148 of August 3, 2008, ("Law 148") deprived the Commission of jurisdiction to establish the applicable transportation rates. *Id.* According to the Department, the applicable reimbursement rates are set by the Puerto Rico Department of Transportation and Public Works ("DTOP"). *Id.* The Department claimed that there was a clerical error in the language of the two guidance documents discussed above, but did not present any evidence to support that claim. *Id.*

---

[1] In her appeal brief, Cáno asserts that the Department has refused to pay her any reimbursement for her transportation expenses. Pls.' Appeal Br. 17 n.7.

The ALJ questioned whether she had jurisdiction to resolve the reimbursement dispute in light of the Department's claim that Law 148 deprived the Commission of authority to establish the applicable transportation rates. She asked the parties to brief the issue, which they did. *Id.* at 6–7. Cáno argued that the ALJ had jurisdiction over all matters pertaining to the "related services" to which special education students are entitled, including the amount of reimbursement for transportation expenses. *Id.* at 7. Cáno also pressed that Law 148 has no provision concerning the manner in which parents of special education students are reimbursed for transportation expenses. *Id.*

On November 10, 2014, the ALJ dismissed Cáno's administrative complaint, concluding that she "lack[ed] jurisdiction to resolve the controversy regarding the applicable rate for [the] transportation scholarship." Docket No. 35-4 at 4. The ALJ noted that "the IDEA Act [sic] has granted administrative law judges the jurisdiction to hear cases in which there is a disagreement regarding reimbursements." Docket No. 35-4 at 3. However, she reasoned that "[g]etting into the merits of the controversy requires interpreting other enacted laws and deciding over matters for which IDEA Act [sic] has not given us authority to intervene." Docket No. 35-4 at 4.

## DISCUSSION

Cáno argues that the ALJ erred in dismissing the administrative complaint for lack of jurisdiction, and that this court should order the Department to reimburse her transportation expenses according to the rates set by the Commission for the academic years included in the administrative complaint, and for the 2014-2015 academic year, which was not presented to the ALJ.

**I.    Department's Authority to Resolve the Reimbursement Dispute**

The IDEA is a Spending Clause statute that seeks to ensure that "all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, school districts must create an "individualized education program" (IEP) for each disabled child. *Id.* § 1414(d). The IDEA is "frequently described

as a model of 'cooperative federalism.'" *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005) (citing *Little Rock Sch. Dist. v. Mauney*, 183 F.3d 816, 830 (8th Cir. 1999)). It "leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, [but] imposes significant requirements to be followed in the discharge of that responsibility." *Bd. of Educ. v. Rowley ex rel. Rowley*, 458 U.S. 176, 183 (1982).

"[C]ourts have generally interpreted the IDEA as allowing reimbursement for the cost not only of private school tuition, but also of 'related services.'" *Díaz-Fonseca v. Commonwealth of P.R.*, 451 F.3d 13, 31 (1st Cir. 2006). The definition of "[r]elated services" includes "transportation." 20 U.S.C. § 1401(26)(A); *see also Díaz-Fonseca*, 451 F.3d at 31. And the regulations provide that "[t]ransportation includes . . . [t]ravel to and from school and between schools." 34 C.F.R. § 300.34(c)(16). When a local educational agency fails to provide the related services to which a student is entitled under the IEP, the child's parents may demand an administrative due process hearing. 20 U.S.C. § 1415(f)(1)(A). After that hearing, any "aggrieved party" may challenge the administrative decision by bringing a civil action in state or federal court. *Id.* § 1415(i)(2)(A).

A.   **Standard of Review**

The ALJ determined that she could not resolve the reimbursement dispute because the IDEA did not grant her jurisdiction to do so.[2] When a state agency interprets a federal statute, circuit courts have generally held that federal courts review that interpretation de novo. *See Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061, 1064 (8th Cir. 2005); *MCI Telecomm. Corp. v. Bell Atlantic Pa.*, 271 F.3d 491, 515–17 (3d Cir. 2001) ("Generally . . . deference is accorded to the interpretations of federal statutes by federal

---

[2] Cáno cites authority discussing the doctrine of personal jurisdiction to argue that the Department had authority to resolve the reimbursement dispute. Pls.' Appeal Br. 14 (citing *Pritzker v. Yari*, 42 F.3d 53, 57–59 (1st Cir. 1994)). But that doctrine does not shed light on the standard of review applicable to the agency's interpretation of the IDEA.

administrative agencies, not to interpretations by state agencies."); *Sw. Bell Tel. Co. v. Pub. Util. Comm'n*, 208 F.3d 475, 482 (5th Cir. 2000); *GTE S., Inc. v. Morrison*, 199 F.3d 733, 745 (4th Cir. 1999) (court reviewed "de novo the [Virginia State Corporation Commission's] interpretation of the Telecommunications Act."); *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495 (9th Cir. 1997) ("We review de novo a state agency's interpretation of a federal statute."); *Turner v. Perales*, 869 F.2d 140, 141–42 (2d Cir. 1989) ("district court erred . . . in holding that the appropriate standard of review of the New York Department of Social Services' interpretation of federal law was governed by the test set forth in" *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44 (1984)).[3] *But see Bellsouth Telecomm., Inc. v. Sanford*, 494 F.3d 439, 447–48 (4th Cir. 2007) ("[E]ven with our *de novo* standard of review, an order of a state commission may deserve a measure of respect in view of the commission's experience, expertise, and the role that Congress has given it in the Telecommunications Act.") (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)).[4]

Moreover, because the Administrative Procedure Act does not govern the Commonwealth of Puerto Rico Department of Education, *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013), is inapplicable here.[5] *See, e.g.*, *Gilliam v. Miller*, 973 F.2d 760, 761–62 (9th Cir. 1992) (court affirmed trial court's determination that because

---

[3] Under the *Chevron* framework, courts apply a two-step analysis, and must defer to a federal agency's reasonable interpretation of an ambiguous statutory provision it is charged with administering. *See Chevron*, 467 U.S. at 843–44.

[4] Under *Skidmore*, the level of respect granted to an interpretation "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140.

[5] In *City of Arlington*, the Supreme Court recently held that "the distinction between 'jurisdictional' and 'nonjurisdictional' interpretations is a mirage. No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*." 133 S. Ct. at 1868. That inquiry is resolved by applying *Chevron*, but "for *Chevron* deference to apply, the agency must have received congressional authority to determine the particular matter at issue in the particular manner adopted.") *Id.* at 1874 (citing *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001)).

defendant's "action was taken in his capacity as a state officer, the [Administrative Procedure Act was] inapplicable."); *see also* 5 U.S.C. § 551(1)(C) ("'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include . . . the governments of the territories or possessions of the United States."). Accordingly, I proceed to review de novo whether the IDEA grants the ALJ authority to consider state law when resolving the reimbursement dispute.

### B.    ALJ's Authority Under the IDEA to Consider State Regulations

The ALJ determined that Cáno was entitled to reimbursement for transportation expenses, but that she could not determine the applicable reimbursement rate because she would have to consider Puerto Rico law cited by the Department. However, the IDEA permits hearing officers to consider both federal and state law when resolving reimbursement disputes. The plain language of the statute requires a hearing officer to "possess knowledge of, and the ability to understand provisions of [IDEA], Federal and State regulations pertaining to [IDEA], and legal interpretations of [IDEA] by Federal and State courts." 20 U.S.C. § 1415 (f)(3)(A)(ii); *see also* 34 C.F.R. § 300.511(c). And the Supreme Court has noted that this statutory provision requires "the appointment of [an] ALJ with technical capacity to understand [the] Act." *Schaffer*, 546 U.S. at 69.

Moreover, courts have permitted hearing officers to consider both state and federal statues when resolving reimbursement disputes. *See e.g., Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 953–54 (4th Cir. 1997) (reimbursement available even where plaintiffs "failed to comply with Maryland's laws and regulations governing reimbursement of private school tuition under IDEA"); *T.G. ex rel. T.G. v. Midland Sch. Dist.*, 848 F. Supp. 2d 902, 929 (C.D. Ill. 2012) (court affirmed hearing officer's denial of reimbursement where "primary reason for denying Plaintiffs reimbursement" was their failure to comply with "federal and Illinois regulations."). And in *D.S.*, the district court considered a hearing officer's dismissal of a due process complaint where, as here, the

hearing officer claimed to lack jurisdiction over the complaint. *D.S. v. Dist. of Columbia*, 699 F. Supp. 2d 229, 235 (D.D.C. 2010). In that case, the hearing officer claimed to lack jurisdiction because the student was not enrolled in a school within the district. *Id.* at 234. The trial court reversed the hearing officer's dismissal, reasoning that "[n]othing in IDEA or the case law interpreting its administrative review procedures suggests such a limitation." *Id.* at 235.

Similarly, the IDEA does not suggest that a hearing officer is prevented from considering state regulations when resolving disputes. To the contrary, under § 1415(f) and the IDEA's model of "cooperative federalism," Congress intended to create a system in which hearing officers consider both state and federal law to ensure that the Act is properly being implemented at the local level. *See* 20 U.S.C. § 1412(a) (participating States must certify to the Secretary of Education that they have "policies and procedures" that will effectively meet the Act's conditions); *id.* § 1415 (f)(3)(ii) (ALJs must have technical competence to understand both state and federal law pertinent to the IDEA); *Schaffer*, 546 U.S. at 52. Moreover, the record indicates that the ALJ did not consider the effect Law 148 has, if any, on the reimbursement dispute. Rather, the ALJ refused to consider the state regulation in contravention to the IDEA. *See* 20 U.S.C. § 1415(f)(3). Affirming the ALJ's interpretation of the IDEA would lead to absurd results, as an ALJ would be deprived of jurisdiction any time one of the parties alleges that a state law is implicated—regardless of whether that state law actually has any effect on the merits of the dispute. Accordingly, the ALJ erred when she determined that the IDEA did not authorize her to consider whether Law 148 has any effect on the applicable reimbursement rate for Cáno's transportation scholarship.

### C.     **Appropriate Remedy**

Cáno acknowledges that the ALJ did not consider the merits of the reimbursement dispute, but urges this court to award the amount of reimbursement she sought in the administrative hearing, as well as reimbursement for the 2014-2015 academic year that

was not presented to the ALJ. In *D.S.*, the court remanded the case to the hearing officer where the hearing officer did not consider the merits of the complaint and dismissed it on the ground that she "lacked jurisdiction." 699 F. Supp. 2d at 235–36. Other courts have similarly remanded IDEA cases to the hearing officer where the hearing officer did not consider the underlying merits of the dispute. *See Jenkins v. Butts Cnty. Sch. Dist.*, 984 F. Supp. 2d 1368, 1380–81 (M.D. Ga. 2013) ("[R]emand to the ALJ is the most appropriate remedy when the . . . complaint was dismissed without an evidentiary hearing and the reviewing court lacks findings and conclusions on the merits of the plaintiff's claims."); *D.N. v. N.Y. Dep't of Educ.*, 905 F. Supp. 2d 582, 589 (S.D.N.Y. 2012) ("rather than reaching the merits of the unreviewed claims, [court] remand[ed] . . . matter to [the state agency]"); *Somoza v. N.Y.C. Dep't. of Educ.*, 475 F. Supp. 2d 373, 391 (S.D.N.Y. 2007) (noting that "in cases where a de novo standard applies, 'courts tend still to return the decision to the agency in order to rely on the agency's expertise and protect the integrity of the administrative process."), *rev'd on other grounds*, 538 F.3d 106, 116 (2d Cir. 2008).

Remanding this case to the Department is the appropriate remedy here because the ALJ did not address the reimbursement dispute on the merits. *See D.S.*, 699 F. Supp. 2d at 235–36; *Jenkins*, 984 F. Supp. 2d at 1380–81; *D.N.*, 905 F. Supp. 2d at 589; *Somoza*, 475 F. Supp. 2d at 391. The state agency has not provided its expertise on the reimbursement dispute, or made findings of fact or conclusions of law for this court to review. *See D.S.*, 699 F. Supp. 2d at 235–36; *see also Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984) ("the Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial.").

Cáno contends that this court need not remand because the appeal presents a purely legal question. *See Ezratty v. Commonwealth of P.R.*, 648 F.2d 770, 774–75 (1st Cir. 1981) (The interests underlying the exhaustion doctrine are not implicated where

"the issue [involves] a pure matter of law as to which specialized administrative understanding plays little role."). The First Circuit has reasoned that the exhaustion doctrine "allows the agency to develop a factual record, to apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes, all before a court will intervene. Insofar as Congress has provided that an agency will decide a matter in the first instance, to apply the doctrine normally furthers specific Congressional intent." *Id.* Cáno suggests there is only a legal dispute here because the Department has admitted that FHC is entitled to reimbursement for his transportation scholarship, and because the Department's guidance documents establish that the applicable reimbursement rates are set by the Commission. Though the Department admitted below that Cáno is entitled to reimbursement, it did not concede that the reimbursement rates are to be set by the Commission. Nor is the applicable rate of reimbursement evident from the guidance documents Cáno submitted, or from other evidence submitted to this court. Under these circumstances, proper adjudication of the dispute would benefit from remand to the administrative agency so that the ALJ can develop the record and make findings of fact and conclusions of law. *See Dubois v. Conn. State Bd. of Educ.*, 727 F.2d 44, 49 (2d Cir. 1984) (trial court correctly determined that administrative record was "incomplete," but incorrectly concluded that plaintiff had not exhausted administrative remedies).

Moreover, the ALJ noted in her ruling that the "payments received by [Cáno] are calculated at the same rates as those of the other students." Docket No. 35-4 at 3. The Department argued before the ALJ that the applicable rate of reimbursement for the transportation scholarship had been settled by another hearing officer in administrative complaint number 2013-098-004. Docket No. 35-3 at 2. Cáno claimed that the applicable reimbursement rate was not adjudicated in that prior hearing. Docket No. 35-2 at 4. The record from that administrative hearing has not been presented to this court, nor is it evident from the administrative record that it was presented to the ALJ. That there may be a prior resolution of the applicable reimbursement rate for Cáno's transportation

scholarship is another reason why remand to the ALJ is appropriate here. *See Theodore v. Dist. of Columbia*, 772 F. Supp. 2d 287, 292 (D.D.C. 2011) (res judicata applied in the context of IDEA administrative proceedings to bar plaintiff from relitigating an issue that had been adjudicated in her prior administrative hearings). Because the administrative record is insufficiently developed to resolve the reimbursement dispute, and because the ALJ did not consider the merits of that dispute, remand to the ALJ is the appropriate remedy here.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is **REVERSED**, and the case is **REMANDED** so that the merits of the parties' reimbursement dispute may be resolved in the first instance by the ALJ.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of October 2015.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge